[No. 22071.   Department Two.   January 21, 1930.]

A. B. CONNELL, *Respondent*, v. WALL STREET BANK, *Appellant*.[1]

*M. E. Mack,* for appellant.
*G. E. Lovell,* for respondent.

FRENCH, J.—On the 4th of April, 1925, one Lovell secured a judgment against Amanda Sandygren in an action brought in the superior court of Spokane county, the amount of the judgment being $2,650. Early in March, 1927, the Great Western Land & Improvement Company also procured a judgment against Amanda Sandygren in the superior court of Spokane county, the amount of the judgment being something over $7,000. Later in the month of March, 1927, the Wall Street Bank procured a judgment against Amanda Sandygren in the superior court of Spokane county

[1]Reported in 283 Pac. 1094.

in amount somewhat in excess of $1,000. Amanda Sandygren was a resident of Lincoln county at the time, and had extensive farm land holdings in Lincoln county, and had actually been engaged in the business of farming for many years.

Mrs. Sandygren was financially much involved at the time these judgments were rendered against her, and it is admitted by both sides that, at that time, she was insolvent.

The record shows that an execution was properly issued on the Lovell judgment, and under such execution, the Lincoln county property was sold by the sheriff on the 22d day of May, 1926.

Respondent Connell had for many years worked for Mrs. Sandygren as a hired man. He was actively engaged in the management and operation of the farm lands in Lincoln county. Shortly before the year of redemption expired, Connell purchased the Lovell certificate of title covering the land, and a sheriff's deed was issued to Connell covering the Amanda Sandygren holdings in Lincoln county, subject, of course, to the existing mortgages and tax liens. Thereafter execution was issued to the Wall Street Bank on its judgment, and the land in question was sold to satisfy such judgment, and this action was brought by Connell to quiet title. From the decree of the lower court quieting title as against the Wall Street Bank, this appeal is prosecuted.

It is the claim of appellant that, in all of these transactions, Connell was acting as the agent of Amanda Sandygren, and that, as a matter of fact, Amanda Sandygren was, at all times, the real owner of the land in question.

The record shows that there was paid to Lovell for the certificate of purchase the sum of $3,000. The record also shows that $2,000 of this money was paid to

Connell by Mrs. Sandygren, and $1,000 he had in his own savings. The record further shows that both Connell and Mrs. Sandygren are well along in years. The record clearly shows that, at the time she paid this $2,000, she owed to Connell a large amount of back wages and she also owed him on a note for money which she had borrowed from him as far back as 1905. Both Mrs. Sandygren and Connell testified that, at the time Mrs. Sandygren paid to Connell the $2,000, she was indebted to him in an amount many thousands of dollars in excess of the amount paid.

The record discloses, and the lower court found, that she desired to, and did, prefer Connell over other unsecured creditors, and she had a right to do so. The record clearly shows that, at the time of this payment, Mrs. Sandygren owed practically every person with whom she was doing business. She was hopelessly involved, owing more than sixty thousand dollars. Connell had been working for her many years. He states in his testimony that Mrs. Sandygren was the best friend he ever had, and it is unbelievable that, being as badly involved as she was with everybody with whom she attempted to transact business, she was not indebted to her hired man far in excess of the $2,000.

Appellant relies, as tending to prove that Connell was Mrs. Sandygren's agent and holding this property in trust for her, largely on the fact that, in subsequent transactions, when he traded a portion of the land for an apartment house in Spokane, he relied on Mrs. Sandygren's advice, she actually conducting a portion of the negotiations, if not all of them, and also on the fact that Mrs. Sandygren never moved from the land in question until she moved to the apartment house in Spokane where she worked as a janitress. But when it is remembered that these people are both elderly people nearing seventy years of age; that Connell had

worked for Mrs. Sandygren for about thirty years, it is not at all strange that he should ask her advice and rely on her advice. In fact, the relationship between the parties is well explained by the following testimony given by Mr. Connell:

"My position with Mrs. Sandygren is just simply this—I have known her for thirty years, even longer than that, and she was the first friend I had in the state, and of course, I worked for her during all these years, and through bad investments and wildcat schemes and one thing and another she got in bad, and I had all my wages tied up in the ranch, and I believed the time was coming when she was going to go broke on account of bad crops and bad investments and other things, and I took it upon myself to protect my own interests in this amount of money I have in it, which, of course, is more than I have notes today for—about $5,000 or $6,000 added on top of that, and I did this for my own protection; but through my friendship with this woman I never expect to see her get out and work in somebody's kitchen as long as I am able to give her a living—."

The sole and only question in this case, as we view it, is, Was the purchase of the Lovell certificate actually made by Mr. Connell with his own funds and for his own benefit? No question is raised as to the legality of the proceedings in the Lovell judgment. No question is raised but what Connell is entitled to prevail in this action if he was the actual purchaser of the Lovell certificate. The lower court well summed up the situation when it was stated:

"Just shortly before the year for redemption was up on the Lovell certificate of sale, Lovell sold the same to the plaintiff in this action for the sum of $3,000, and upon the expiration of the year, the plaintiff, by surrendering his certificate of sale, procured from the sheriff of Lincoln county a deed to the Amanda Sandygren holdings in Lincoln county subject to existing mortgages and tax liens.

"Now, had any person other than Mr. Connell acquired the Lovell interest, or had Lovell himself retained his certificate of sale until the year of redemption had expired, no attack could have been made upon the transaction, because the defendant in this case, at that time, to wit, June, 1927, did not even have a lien on the lands of Amanda Sandygren in Lincoln county.

"It appears here that Mr. Connell, at the time of the entry of these various judgments and at the time of the sale under the Lovell judgment, was an unsecured creditor of Amanda Sandygren in a very large amount, mostly for wages due as a foreman on her farms for a period of almost thirty years, and it further appears that the relationship between Connell and Mrs. Sandygren was very friendly and, during her years of prosperity, she relied on him and his judgment very much in the operation of her extensive farm holdings, and when in 1926, or 1927, she was convinced that her financial difficulties were such, when coupled with the crop conditions then existing and which had existed for a number of years previous, that she would never be able to meet her obligations, she told the plaintiff in this case she would pay him a small portion of her obligations, and with that money, together with a part of his savings, he purchased from Mr. Lovell his certificate of sale just a few days prior to the time when the sheriff's deed would issue. By Mrs. Sandygren's conduct, there can be no doubt that she desired to, and did, prefer Connell over her other unsecured creditors, which she had a right to do. She is a woman, probably nearing seventy years of age, and by reason of her financial misfortune, left penniless, and she doubtless thought and felt, and subsequent events have proven, that the plaintiff Connell would assist her, and in a measure provide for her, but he was under no legal obligation to do this.

"I cannot find, in viewing all the evidence in this case and the unusual situation that existed, that the defendant has borne the burden of proof that is required to establish fraud, and to prove that, in the purchase of the Lovell certificate of sale, the plaintiff Connell was acting as the agent for Mrs. Sandygren,

and that she, from that time on, had a secret and undisclosed interest in the real estate herein involved."

There is involved in this case only a question of fact, and our examination of the record shows that the testimony abundantly supports the conclusions reached by the trial court.

Judgment affirmed.

MITCHELL, C. J., FULLERTON, MAIN, and HOLCOMB, JJ., concur.